**Jason M. ROSENBLUTH, M.D., Plaintiff–Appellant,**

v.

**PRUDENTIAL SECURITIES, INC., Defendant–Appellee.**

No. 03–16843.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 2005.

Decided May 6, 2005.

Gordon D. McAuley, Lawrence M. Cirelli, Michael B. McNaughton, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, Lawrence S. Greenwald, Catherine A. Bledsoe, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, for Plaintiff–Appellant.

Gilbert R. Serota, Esq., Jason M. Skaggs, Howard Rice Nemerovski Canady Falk, San Francisco, CA, for Defendant–Appellee.

Before: LAY,* B. FLETCHER, and HAWKINS, Circuit Judges.

MEMORANDUM **

Jason M. Rosenbluth, M.D., alleges that Prudential Securities, Inc. (PSI) breached an oral contract regarding a venture capital fund called Galinet. The district court granted summary judgment for PSI and Rosenbluth appeals.

This court reviews an appeal from a grant of summary judgment de novo and considers the evidence in the light most favorable to Rosenbluth, the nonmoving

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

party. *See Simo v. Union of Needle-trades, Industrial & Textile Employees*, 322 F.3d 602, 609 (9th Cir.2003). In this case, the evidence indicates that no binding contract, oral or otherwise, existed between the parties. On this basis alone, the decision of the district court is affirmed.

The parties' intentions are determinative of the question of contract formation. *See Dimario v. Coppola*, 10 F.Supp.2d 213, 219–20 (E.D.N.Y.1998) (applying New York law); *see also R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74–75 (2d Cir.1984). The strongest evidence of the parties' intent in this case is the merger clause contained in the draft limited partnership and operating agreements. Although these written documents do not constitute a contract because they lacked multiple material terms (addressed *infra* at 3–4), they are probative of the parties' contemplations. The draft documents state:

> This Agreement contains the entire understanding among the Members and supercedes any prior written or oral agreement between them respecting the Company and each Investment Pool of the Company. There are no representations, agreements, arrangements, or understandings, oral or written, among the Members relating to the Company that are not fully expressed in this Agreement.

This language was included in draft agreements prepared by Galinet's attorneys, who were hired by Rosenbluth, before and after the October 4 meeting at which Rosenbluth claims a contract was made. The presence of merger clauses even after October 4 "is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 324 (2d Cir.1997).

In addition to the merger clauses, the draft documents contained open, material terms. The first missing terms was actually an entire section of the contract setting forth definitions of the standard terms used therein, also known as the "Summary of Terms." The second missing term was the dollar amount of the parallel funds to be invested in Galinet by PSI. This cash-flow was absolutely critical to the deal. The draft versions of the documents indicated that both of these terms were "to be inserted." Draft documents containing these same missing terms were circulated by Galinet's attorneys weeks after the October 4 meeting. Open, material terms belie the existence of a contract. *See Goodworth Holdings, Inc. v. Suh*, 239 F.Supp.2d 947, 957 (N.D.Cal.2002) (finding no contract where crucial terms were omitted from a term sheet), *aff'd*, 99 Fed.Appx. 806, 2004 WL 1153696 (9th Cir.2004).

As further evidence of open terms, the district court cited "Plaintiff's own email on October 18, 2000," which "laid out eight significant open terms." Rosenbluth's October 18 email does not identify eight open terms, but the eighth item in the email clearly mentions an issue that was still under negotiation; it revealed the parties were still "working through language" regarding removal of the general partner for cause. Rosenbluth apparently sought to create some mechanism to reduce the limited partnership's voting control. This is a material term.

Lastly, we agree with the district court that there was no partial performance, and that a writing would typically be expected in $200 million "mega-deals" of this sort. We are mindful of the general rule that "[t]he greater the complexity and importance of the transaction, the more likely it is that the informal communications are intended to be preliminary only." 1 CORBIN, CORBIN ON CONTRACTS § 2.9, at 152 (rev.

ed.1993). Here, the length and detail of the draft agreements demonstrate this transaction was not the type typically formed through an oral agreement. Moreover, Thomas Volpe, a key party to the alleged contract, testified that he had been in the investment banking business for twenty-seven years but had never seen a venture capital fund formed on the basis of an oral agreement. Rosenbluth provides no evidence contrary to Volpe's testimony. Thus, even when viewed in the light most favorable to Rosenbluth, the evidence compels us to conclude that no contract existed.

**AFFIRMED.**